## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND, <br><br> and <br><br> TRUSTEES OF THE BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND, <br><br> 10401 Connecticut Avenue <br> Kensington, Maryland 20895-3960, <br><br>            Plaintiffs, <br><br>       v. <br><br> JUST BORN II, INC. <br> dba GOLDENBERG CANDY COMPANY <br><br> 1300 Stefko Boulevard <br> Bethlehem, Pennsylvania 18017, <br><br>           Defendant. | Civil Action No. |

## COMPLAINT

### Introduction

1.     This is an action to collect contributions owed to the Plaintiff Pension Fund.
The action is brought pursuant to the Employee Retirement Income Security Act, 29
U.S.C. §§ 1001, et seq., as amended ("ERISA").

## Jurisdiction and Venue

2.     The Court has subject-matter jurisdiction of this action pursuant to 29 U.S.C. § 1132(a)(3) and (e)(1) because the Trustees of the Bakery and Confectionery Union and Industry International Pension Fund ("Pension Fund"), who are fiduciaries under ERISA, seek to enforce provisions of Title I of ERISA that require employers to make contributions to a multiemployer pension plan according to the terms of the plan, 29 U.S.C. § 1145, and in accordance with a schedule of contribution rates that the Trustees, acting in their capacity as the Pension Fund plan sponsor, are required to implement pursuant to 29 U.S.C. § 1085(e)(3)(C)(ii)-(iv).

3.     This Court has venue over this action pursuant to 29 U.S.C. § 1132(e)(2) because this is the district in which the plaintiff Pension Fund is administered.

## Parties

4.     Plaintiff Pension Fund is a trust fund established and maintained pursuant to 29 U.S.C. § 186(c)(5).  Plaintiff Pension Fund is an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(2) and (3), and is maintained for the purpose of providing retirement benefits to eligible employees of participating employers.  Plaintiff Pension Fund is also a multiemployer pension plan within the meaning of 29 U.S.C. § 1002(37).

5.    Plaintiff Trustees of the Bakery and Confectionery Union and Industry International Pension Fund ("Trustees") are fiduciaries within the meaning of ERISA, 29 U.S.C. § 1002(21)(A).

6.    All plaintiffs maintain their principal place of business at 10401 Connecticut Avenue, Kensington, Maryland 20895.  Plaintiff Pension Fund is administered at that location, within the District of Maryland.

7.    Plaintiffs bring this action on behalf of themselves and on behalf of the Pension Fund's participants and beneficiaries pursuant to 29 U.S.C. §§ 1132(a)(3) and 1145.

8.    Defendant Just Born II, Inc., dba Goldenberg Candy Company ("defendant") is engaged in the manufacture of candy, including Goldenberg's Peanut Chews®.  It is an employer in an industry affecting commerce within the meaning of ERISA, 29 U.S.C. § 1002(5), (11) and (12) and § 1003(a)(1).

9.    Defendant's principal business location is in Bethlehem, Pennsylvania.

Statement of Facts

10.    At all times relevant to this Complaint, defendant has been party to a series of collective bargaining agreements ("Collective Bargaining Agreements") with the Bakery, Confectionery and Tobacco Workers International Union, Local Union 6 ("Local 6"), covering "all inside production employees in the Company Plant at 7701 State Road, Philadelphia, Pennsylvania."  The most recent Collective

Bargaining Agreement, effective from March 1, 2012, through February 28, 2015, is incorporated into this Complaint and attached as Exhibit A.

11.     In each of the Collective Bargaining Agreements, defendant agreed to be bound as a party by all the terms and provisions of the Agreement and Declaration of Trust ("Trust Agreement") that established the Pension Fund. Exhibit A Art. 22 ¶ 1.

12.     Defendant also promised to make contributions to the Pension Fund "for each employee working in job classifications covered by a Collective Bargaining Agreement between the Employer and the Union," at specified rates for each hour worked by such an employee up to a maximum of 40 hours in any week. *Id.* ¶ 2.

13.     Each of the Collective Bargaining Agreements specifically provides, "Contributions shall be paid from the first day the employee begins working in a job classification covered by the Collective Bargaining Agreement between the Employer and the Union, and shall be paid on behalf of all employees in covered job classifications – there are no exceptions for employees who are not members of the Union, temporary, seasonal, or part-time employees, for leased employees, or for any other type of employee." *Id.*

14.     The provision quoted in Paragraph 13 reflects the Pension Fund's longstanding uniform contribution requirement for participating employers.  That

requirement was adopted because the relationship between employer contribution rates and the benefits that the Pension Fund pays to employees is based on an assumption that each employer will make contributions on behalf of all persons working in the bargaining unit.  This requirement is intended to keep employers from effectively reducing their contribution rates by carving out particular groups of employees who are performing the work of the bargaining unit.

15.    In 2012, during the term of the Collective Bargaining Agreement that is attached as Exhibit A, the Pension Fund's actuary certified that the Pension Fund was in "critical status," as defined in ERISA, 29 U.S.C. § 1085(b)(2).  The Trustees were therefore required to develop a "Rehabilitation Plan," pursuant to ERISA, 29 U.S.C. § 1085(e), for the purpose of improving the Pension Fund's actuarial funding.  One of the statutory requirements for such a Rehabilitation Plan is that the plan sponsor provide to all bargaining parties "1 or more schedules showing revised benefit structures, revised contribution structures, or both, which, if adopted, may reasonably be expected to enable the multiemployer plan to emerge from critical status . . . ." ERISA, 29 U.S.C. § 1085(e)(1)(B)(i).

16.    The Trustees developed a Rehabilitation Plan that included both revised benefit structures and revised contribution structures, as ERISA required. The Trustees provided two alternate schedules to contributing employers and the unions with which they negotiate.  One of those schedules is called the Preferred

Schedule, and the other is called the Default Schedule. The Trustees' notice to

employers describing the two schedules is incorporated into this Complaint and

attached as Exhibit B. Both schedules require employers to comply with the

Pension Fund's uniform Employer contribution requirements, including the

requirement to pay contributions "up to the weekly maximum stated in the

collective bargaining agreement for every hour or portion of an hour, beginning on

the first day of employment, that a person (a) works in a job classification that is

covered by the collective bargaining agreement or (b) receives pay in lieu of such

work . . . ." Exhibit B pp. 6, 9.

17.    On December 28, 2012, defendant and Local 6 signed a "PPA

Schedule Election Form," which is incorporated into this Complaint and attached

as Exhibit C. That form recited that the parties amended their existing Collective

Bargaining Agreement to incorporate the Preferred Schedule. It also stated, in

paragraph 4: "Employer agrees to be bound by all Fund rules governing

contributions to the Fund set forth in the Fund's PPA Schedules, including but not

limited to the requirement to contribute for every hour or portion of an hour,

beginning on the first day of employment, that a person (i) works in a job

classification that is covered by the collective bargaining agreement or (ii) receives

pay in lieu of such work . . . and to make those contributions on behalf of full-time

and part-time, temporary and permanent, probationary, seasonal and leased

employees, and employees of any other type, either working or receiving pay as specified in (i) or (ii) above."

18.     Following expiration of the Collective Bargaining Agreement attached as Exhibit A, defendant and Local 6 agreed to an extension until April 30, 2015, while they engaged in collective bargaining.  The extension agreement is incorporated into this Complaint and attached as Exhibit D.

19.     In collective bargaining, defendant demanded that any new agreement relieve defendant from the obligation to make contributions to the Pension Fund on behalf of newly hired employees.  Local 6 refused that demand, insisting that defendant was required to comply with the terms of the Preferred Schedule and thus make contributions to the Pension Fund on behalf of all employees working in the bargaining unit.

20.     On November 2, 2015, defendant declared that the parties' negotiations were at an impasse and purported to implement unilaterally its "best offer."  Under that "best offer" defendant would make contributions to the Pension Fund only on behalf of current employees, while on behalf of any subsequently hired employees defendant would contribute only to an unrelated defined contribution retirement plan under section 401(k) of the Internal Revenue Code.

21.     On November 6, 2015, the Pension Fund advised defendant and Local 6 that because they had failed, after the expiration of the Collective Bargaining

Agreement attached as Exhibit A, to "adopt a contribution schedule with terms consistent with the updated rehabilitation plan and a schedule [of contributions] from plan sponsor," the Multiemployer Pension Reform Act of 2014 required the Trustees to implement the "contribution schedule applicable under the expired collective bargaining agreement, as updated and in effect on the date the collective bargaining agreement expire[d] . . . beginning on the date" that is 180 days after the collective bargaining agreement's expiration date.  29 U.S.C. § 1085(e)(3)(C)(ii), (iii).  The contribution schedule "applicable under the expired collective bargaining agreement" was the Preferred Schedule.  The Pension Fund therefore notified defendant that it had implemented the Preferred Schedule and that defendant was obligated to pay contributions at the rates provided by the Preferred Schedule for all persons working in job classifications covered by the collective bargaining agreement, with no exception for newly hired employees. The notice of implementation is incorporated into this Complaint and attached as Exhibit E.

22.    In disregard of the Pension Fund's statutory implementation of the Preferred Schedule, from November 2015 through February 2016 defendant has not paid contributions for newly hired employees in the bargaining unit.  During that period, defendant has reported and remitted contributions to the Bakery & Confectionery Union & Industry International Health Benefits Fund for non-pension benefits on behalf of new

bargaining-unit employees, but has failed to report and remit contributions for those same employees to the Pension Fund.

23.     Through the last pay period ending in February 2016, the cumulative hours defendant reported to the Health Benefits Fund exceed by 2,622 the cumulative hours defendant reported to the Pension Fund.  At the applicable contribution rates, the cumulative amount of unpaid contributions to the Pension Fund was $10,106.98 as of that time.

### Claim for Relief

24.     Plaintiffs reassert all of the facts alleged in paragraphs 1 through 23.

25.     Defendant's failure to remit contributions to the Pension Fund on behalf of new employees is a breach of its obligation under the Preferred Schedule, which was lawfully implemented by the Pension Fund as required by 29 U.S.C. § 1085(e)(3)(C)(ii), (iii).

26.     ERISA provides that a failure to make a contribution under a schedule of contribution rates imposed under 29 U.S.C. § 1085(e)(3)(C)(ii) "shall be treated as a delinquent contribution under section 515 [of ERISA, 29 U.S.C. § 1145]," §1085(e)(3)(C)(iv).

27.     The Trustees have a cause of action against employers under ERISA, 29 U.S.C. § 1132(a)(3), to collect delinquent contributions under section 515 of ERISA, 29 U.S.C. § 1145. In such an action the court "shall award" the plan the unpaid

contributions, interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and costs of the action, and such other legal or equitable relief as the court deems appropriate.  29 U.S.C. § 1132(g)(2).

Prayer For Relief

WHEREFORE, Plaintiffs Pension Fund and Trustees demand judgment for:

(a)  A declaration that defendant is bound by the schedule of contributions that the Pension Fund implemented effective as of October 27, 2015, and that defendant is therefore obligated to make contributions to the Pension Fund for all employees performing work in job classifications covered by the expired Collective Bargaining Agreement, including all employees hired on or after November 2, 2015;

(b)  A judgment in the full amount of the delinquent contributions defendant owes to the Pension Fund through the date of judgment;

(c)  Interest, liquidated damages, attorney's fees and costs; and

(d)  Such other legal and equitable relief to which plaintiffs are entitled.

JULIA PENNY CLARK (Bar No. 12401)
ANDREW D. ROTH
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Washington, D.C. 20005
(202) 842-2600

Counsel for Plaintiffs