**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **BAKERY AND CONFECTIONARY UNION AND INDUSTRY INTERNATIONAL PENSION FUND, et al.,**<br><br>        **Plaintiffs,**<br>**v.**<br><br>**JUST BORN II, INC. DBA GOLDENBERG CANDY COMPANY,**<br><br>        **Defendant.** | Civil Action No. 8:16-cv-00793-DKC<br><br>Hon. Deborah K. Chasanow |

**Memorandum of Points and Authorities in**
**Opposition to Plaintiffs' Motion for Judgment on the Pleadings and in**
**Support of Just Born II, Inc.'s Cross-Motion for Judgment on the Pleadings**

Elizabeth A. Scully
   (MD Fed. Bar # 27402)
Mark W. DeLaquil (phv)
Jay P. Krupin (phv)
David B. Rivkin, Jr. (phv)
Baker & Hostetler LLP
1050 Connecticut Ave. N.W.,
Suite 1100
Washington, DC 20036
Phone: (202) 861-1527
Fax: (202) 861-1783
escully@bakerlaw.com

*Counsel for Defendant Just Born*

# TABLE OF CONTENTS

Introduction ................................................................................................ 1

Statement of Facts ...................................................................................... 2

    A.    Parties ........................................................................................ 2

    B.    The Pension Fund ..................................................................... 3

    C.    Just Born's Relationship With Plaintiffs .................................. 5

    D.    The NLRB Affirms the Lawfulness of Just Born's Offer To
        Contribute Only for Existing Employees ................................. 5

    E.    Plaintiffs Bring a Contribution Action ..................................... 7

Legal Standard ............................................................................................ 8

Argument .................................................................................................... 8

    A.    Just Born Is Entitled to Judgment Because Just Born Is
        Not Obligated To Contribute to the Pension Fund on
        Behalf of New Employees ........................................................ 8

        1.    The NLRB Holds Primary Jurisdiction Over the
            Question Whether Just Born Has "An Obligation
            To Contribute" ................................................................ 11

        2.    Just Born Has No Obligation To Contribute For
            New Employees Under Federal Labor Law .................. 12

        3.    Just Born's Interpretation of ERISA Section 305
            Aligns the Provision With Federal Labor Law .............. 14

    B.    The Court Should Not Strike Just Born's Affirmative
        Defenses ................................................................................... 17

        1.    Just Born's First Through Fourth Affirmative
            Defenses Are Cognizable ................................................ 18

        2.    Just Born's Fifth Through Ninth Defenses Are
            Cognizable and Sufficiently Pleaded ............................. 19

            a.    ERISA Section 515 Does Not Bar
                Affirmative Defenses Based on Plaintiffs'
                Inequitable Conduct .............................................. 19

            b.    The Fifth Through Ninth Affirmative
                Defenses Are Adequately Pleaded ....................... 25

Conclusion .................................................................................................. 30

# TABLE OF CITATIONS

## Cases

*Agathos v. Starlite Motel*, 977 F.2d 1500 (3d Cir. 1992) ........................................ 24

*Alcantara v. Bakery & Confectionery Union & Industry Int'l Pension Fund Pension Plan*, 751 F.3d 71 (2d Cir. 2014) .................................... 4

*American Ship Bldg. Co. v. NLRB*, 380 U.S. 300 (1965) ............................... 6

*AMF Bowling Co., Inc. v. NLRB*, 63 F.3d 1293 (4th Cir. 1995) ....................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................25–26

*Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018 (4th Cir. 1997)................................19–20, 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................25–26

*Bell Atlantic-Maryland, Inc. v. Prince George's County*, 155 F. Supp. 2d 465 (D. Md. 2001)................................................................ 8

*Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310 (2d Cir. 1990) ........................... 22

*Blevins v. United States,* 769 F.2d 175 (4th Cir. 1985) ......................................... 15

*Board of Trustees, Mich. United Food & Commercial Workers Union v. Eberhard Foods, Inc.*, 831 F.2d 1258, 1261 (6th Cir. 1987).................................... 28

*Board of Trustees of Watsonville Frozen Food Welfare Trust Fund v. California Co-op. Creamery*, 877 F.2d 1415 (9th Cir. 1989)................................20–21

*Brown v. Inst. For Family Centered Servs., Inc.*, 394 F. Supp. 2d 724 (M.D.N.C. 2005) ........................................................... 17

*Carl Colteryahn Dairy, Inc. v. W. Pa. Teamsters & Employers Pension Fund*, 847 F.2d 113 (3d Cir. 1988) ....................................................... 25

*Chisom v. Roemer*, 501 U.S. 380 (1991)................................................................. 16

*Construction Indus. Laborers, Pension Fund v. Wellington Concrete LLC*, No. 15-804, 2016 WL 3021586 (D. Mo. March 31, 2016).................................. 22

*Cort v. Ash*, 422 U.S. 66 (1975) ................................................................... 24

*Costello v. Grundon*, 651 F.3d 614 (7th Cir. 2011) ................................................ 24

*EC Term of Years Trust v. United States*, 550 U.S. 429 (2007)........................... 15

*Farmer v. Emp't Sec. Comm'n*, 4 F.3d 1274 (4th Cir. 1993)................................. 15

*Fed. Deposit Ins. Corp. v. British-Am. Corp.*, 744 F. Supp. 116 (E.D.N.C. 1990) ................................................................... 17

*First Fin. Sav. Bank, Inc. v. Am. Bankers Ins. Co. of Fla., Inc.*, 783 F. Supp. 963 (E.D.N.C. 1991) ............................................................ 17

*Founders Ins. Co. v. Hamilton*, No. 5:15-CV-00408-JMC, 2015 WL 3458470 (D.S.C. June 1, 2015) ...................................................... 17

*Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331 (D. Md. 2012) ...................................................................................... 26

*In re Bakery & Confectionery Union & Industry Int'l Pension Fund Pension Plan*, 865 F. Supp. 2d 469 (S.D.N.Y. 2012) ............................... 4

*Inland Steel Co.*, 77 N.L.R.B. 1 (1948) .................................................... 6

*Irigaray Dairy v. Dairy Employees Union Local No. 17 Christian Labor Ass'n of the United States of Am. Pension Trust*, 153 F. Supp. 3d 1217 (E.D. Cal. 2015) ............................................................................ 22

*JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 128 F. Supp. 2d 926 (E.D. Va. 2001) .................................................................................. 29

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) ..................... 2, 20, 22–24

*Laborers Health and Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539 (1988) .................. 1–2, 11–13

*Laborers' Pension Fund v. Litgen Concrete Cutting & Coring Co.*, 128 F.R.D. 96 (N.D. Ill. 1989) .................................................................. 21

*Lee Lumber and Bldg. Material Corp.*, 334 NLRB 399 (2001) ............. 15

*Lockheed Martin Corp. v. United States*, 973 F. Supp. 2d 591 (D. Md. 2013) .................................................................................................. 25–26

*M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015) .......... 24, 27

*Mass. Laborers' Health & Welfare Fund v. Explosives Eng'g, Inc.*, 136 F.R.D. 24 (D. Mass. 1991) .................................................................. 21

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) ..................... 24

*Nash v. Trustees of Boston Univ.*, 946 F.2d 960 (1st Cir. 1991) ........... 24

*Nat'l Credit Union Admin. v. First Union Capital Markets Corp.*, 189 F.R.D. 158 (D. Md. 1999) .................................................................... 22

*Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556 (6th Cir. 2015) ............. 20

*Patten v. United States*, 116 F.3d 1029 (4th Cir. 1997) ....................... 15

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) ........................... 23–24

*Posadas v. Nat'l City Bank*, 296 U.S. 497 (1936) ................................ 15

*Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413 (4th Cir. 2005) ................................................................................................ 25

*Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir. 1990) .................................................................................................. 25

*Spickerman v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 801 F.2d 257 (7th Cir. 1986) ............................................................ 27

*Taft Broadcasting Co.*, 163 NLRB 475 (1967) ....................................... 13

*Trustees of Local 138 Pension Trust Fund v. F.W. Honerkamp Co., Inc.*, 692 F.3d 127 (2d Cir. 2012) ....................................................... 16–17

*Trustees of Local 813 Ins. Trust Fund v. Wilner's Livery Serv., Inc.*, No. 11-CV-3180 DLI CLP, 2012 WL 4327070, at *6 (E.D.N.Y. Sept. 19, 2012) .......................................................................................... 21

*Williams v. Salt City Painting, Inc.*, No. 91-CV-0320, 1992 WL 265944 (N.D.N.Y. Oct. 1, 1992) ................................................... 21

## Statutes and Rules

26 U.S.C. § 404 ............................................................................................. 10

29 U.S.C. § 160 ............................................................................................. 13

29 U.S.C. § 1002 ......................................................................................... 2–3

29 U.S.C. § 1085 ...................................................................................... *passim*

29 U.S.C. § 1132 .................................................................................... 11, 24

29 U.S.C. § 1145 ......................................................................... 19–20, 23–24

29 U.S.C. § 1392 ........................................................................... 10, 14, 16

Federal Rule of Civil Procedure 8 ...................................................... 25–26

Federal Rule of Civil Procedure 12 ................................................ 8, 17, 26

Federal Rule of Civil Procedure 56 .......................................................... 8

## Other Authorities

Restatement (Second) of Contracts § 162 ............................................... 29

Restatement (Second) of Contracts § 164 (1981) .............................. 27, 29

26 Williston on Contracts § 68:5 (4th ed.) ............................................. 30

## Introduction

When Congress amended ERISA to address issues that arose in multiemployer pension plans, it did so expressly against the backdrop of federal labor law principles governing the relationship between employees, like Plaintiffs' beneficiaries, and employers, like Just Born. One of those principles is that participation in a multiemployer pension plan is a matter of consent for an employer, which has the right to agree to participate in the plan on behalf of all, some, or none of its employees. Just Born exercised this right when it reached impasse in negotiations with the Bakery, Confectionary and Tobacco Workers International Union, Local 6 (the "Union"), at its Philadelphia plant, implementing its best-and-final offer to make contributions to the Pension Fund on behalf of existing employees but not to subject new employees to the risks posed by a Pension Fund that has declared itself in "crisis."

The Union challenged Just Born's position before the National Labor Relations Board. But the Union lost. Plaintiffs now seek to overturn that decision by suing to force Just Born to make contributions to the Plan where there is no collective bargaining agreement, where the Fund's rules are expressly inapplicable, and where Just Born has no underlying federal labor law obligation to make the contributions. Such suits have been barred by nearly thirty years of precedent, *see Laborers Health and Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539

1

(1988), and Plaintiffs' novel attempt to rely on multiemployer pension amendments to ERISA to surmount that bar fails.

Even if the Plaintiffs were correct that a contribution action against an employer potentially were available, Plaintiffs *still* would not be entitled to judgment on the pleadings. Defendants in ERISA contribution actions may raise federal common law defenses, so long as the defenses are related to the pension fund's claims for contributions. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 87–89 (1982). Here, the crux of Plaintiffs' claim is that the "crisis" status determination mandated imposition of a contribution schedule on Just Born. Having predicated their entire theory of liability on their "crisis" rights, Plaintiffs cannot be heard to complain that Just Born's challenge to this "crisis" determination is unrelated or extraneous to their claims.

The Court should enter judgment for Just Born. Alternatively, the Court should deny Plaintiffs' motion and direct the parties to schedule a Rule 16 conference as soon as practicable.

### Statement of Facts

A.     Parties

Defendant Just Born II, Inc. ("Just Born") is a confectionary manufacturer that does business under the name "Goldenberg Candy Company." ECF No. 1, Compl. ¶ 8. Just Born manufactures Goldenberg's Peanut Chews®. Compl. ¶ 8.

Plaintiff Bakery and Confectionary Union and Industry International Pension Fund (the "Pension Fund") is a multiemployer pension plan within the meaning of 29

U.S.C. § 1002(37). Compl. ¶ 4. Plaintiff Trustees of the Bakery and Confectionery Union and Industry International Pension Fund are fiduciaries who administer the Pension Fund. Compl. ¶¶ 5–6.

## B.    The Pension Fund

There is no question that the Pension Fund is "underfunded," in the sense that its obligations to current and future beneficiaries exceed its assets. Plaintiffs have gone further, however, and have represented since 2012 that the Pension Fund is in "critical status" within the meaning of ERISA Section 305, 29 U.S.C. § 1085. Compl. ¶ 15.

Not all underfunded pension plans are in critical status. The term "critical status" is defined by law, *see* ERISA § 305(b)(2), 29 U.S.C. § 1085(b)(2), and is determined by considering how underfunded the plan is over one of several statutory measures, *see id.* ERISA Section 305 requires that the plan's actuary make the certification of "critical status," *see* ERISA § 305(b)(3)(A)(i), 29 U.S.C. § 1085(b)(3)(A)(i), and to do so by employing reasonable actuarial standards, ERISA § 305(b)(3)(B)(i), 29 U.S.C. § 1085(b)(3)(B)(i), based on information provided by plan sponsors that is "reasonabl[e]" and is taken "in good faith," *see* ERISA § 305(b)(3)(B)(iii), 29 U.S.C. § 1085(b)(3)(B)(iii). Once a plan is certified as being in "critical status," the plan sponsor gains the ability to increase employers' contribution requirements and to decrease benefits paid to beneficiaries through the imposition of a "rehabilitation plan." *See* ERISA § 305(e), 29 U.S.C. § 1085(e).

Despite the Pension Fund's history of underfunding, the Pension Fund had never been certified as being in "critical status" until 2012, shortly before an adverse decision of the United States District Court for the Southern District of New York. *See In re Bakery & Confectionery Union & Industry Int'l Pension Fund Pension Plan*, 865 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd sub nom. Alcantara v. Bakery & Confectionery Union & Industry Int'l Pension Fund Pension Plan*, 751 F.3d 71 (2d Cir. 2014). That decision held that the Plaintiffs' decision in 2010 to unilaterally reduce pension benefits for certain retirees violated ERISA's "anti-cutback" provisions. *See id.*; ECF No. 9-1, Corrected Answer and Affirmative Defenses ("Answer") ¶ 34. By certifying that the plan was in critical status, Plaintiffs were able to accomplish the objectives of their unlawful 2010 amendment. Answer ¶ 36.

The critical status certification was based on a series of assumptions that differed from the Pension Fund's historic evaluation practices. Answer ¶¶ 37–46. The alterations and deviations in actuarial assumptions were, without exception, a one-way ratchet: they all purported to reflect and predict a worse, not a better, financial status than did the previous assumptions. Answer ¶ 42. Moreover, Plaintiffs never explained to Just Born or to other employers that the "critical status" determination depended on alterations in actuarial assumptions that had not previously been applied in analyzing the health of the Pension Fund. Answer ¶ 45.

C.     **Just Born's Relationship With Plaintiffs**

Just Born operates a candy manufacturing plant in Philadelphia, Pennsylvania. Compl. ¶ 10. At various times, Just Born has been party to collective bargaining agreements with the Union for certain employees at the Philadelphia facility. Answer ¶ 10; Compl. Ex. A. The most recent collective bargaining agreement between Just Born and the Union ran from March 1, 2012, through April 30, 2015. Compl. Exs. A, D. Under the terms of that agreement, Just Born agreed to make contributions to the Pension Fund on behalf of employees who worked in certain job classifications that were covered by the collective bargaining agreement. Compl. Ex. A art. 22(2). Just Born's agreement to contribute to the Pension Fund was "subject in all respects to the provisions of the Labor-Management Relations Act of 1947, as amended, and to any other applicable laws." Compl. Ex. A art. 22(8). As a result of the Rehabilitation Plan, which Plaintiffs imposed shortly after the execution of the collective bargaining agreement, Just Born has paid over $1 million in surcharges to the Pension Fund over and above the contributions to which it had agreed under the Collective Bargaining Agreement. Answer ¶ 49.

D.     **The NLRB Affirms the Lawfulness of Just Born's Offer To Contribute Only for Existing Employees**

Just Born's contractual obligations pursuant to the Rehabilitation Plan expired with the collective bargaining agreement in April 2015. Answer ¶ 51; Compl. Ex. D. Just Born and the Union then commenced negotiations for a new agreement. Answer

¶ 52. Because employee pension benefits are a subject of mandatory bargaining, *see Inland Steel Co.*, 77 N.L.R.B. 1, 4–7 (1948), Just Born's contributions to the Pension Fund on behalf of all employees who worked in certain job classifications continued during bargaining.

Over the course of its relationship with Plaintiffs, Just Born has developed significant concerns about Plaintiffs' management of the Pension Fund and whether continued participation in the Pension Fund is in the best interests of Just Born's employees. As a result, Just Born's bargaining offers declined to make contributions to the Pension Fund on behalf of all employees who worked in certain job classifications, present and future. Answer ¶ 52. Instead, Just Born offered to contribute to the Pension Fund for then-current employees in those job classifications, with new employees receiving contributions into an existing 401(k) plan instead of to the Pension Fund. Answer ¶ 52.

The Union met Just Born's offer with an administrative complaint. Answer ¶ 53. It alleged to Region 4 of the National Labor Relations Board that Just Born's proposal to contribute to the Pension Fund only on behalf of current employees was unlawful and constituted bad faith bargaining. Answer ¶ 53. After investigating the claims, the Region dismissed them as unfounded. Answer ¶ 53. The Union did not exercise its right to appeal the dismissal to the General Counsel of the National Labor Relations Board. Answer ¶ 53.

Despite Just Born's attempts to reach a new collectively bargaining agreement with the Union, the parties reached impasse on November 2, 2015. Compl. ¶ 20. Just Born then exercised its right under federal labor law, *see, e.g., Am. Ship Bldg. Co. v. NLRB*, 380 U.S. 300, 318 (1965), to implement its best-and-final offer as the terms of employment. Answer ¶ 52; Compl. ¶ 20. As with its prior offer, which was the basis of the Union's administrative complaint, under its best-and-final offer, Just Born would make contributions to the Pension Fund for then-current employees but not for new employees. Answer ¶ 52. Instead, Just Born would make contributions for new employees' retirement into the existing 401(k) plan. Answer ¶ 22. Just Born has not made contributions to the Pension Fund for new employees since that time. Answer ¶ 22.

E.     **Plaintiffs Bring a Contribution Action**

The Union did not challenge Just Born's declaration of impasse reached as constituting an unfair labor practice. Answer ¶ 54. Nevertheless, just days after Just Born and the Union had reached impasse, Plaintiffs purported to impose the contribution schedule from the Rehabilitation Plan. *See* Compl. Ex. E. Four months later, in March 2016, Plaintiffs filed the instant suit, alleging that Just Born is liable for delinquent contributions because it has not remitted contributions to the Pension Fund as they allege is required by ERISA Section 305(e)(3)(C)(ii)–(iii), 29 U.S.C. § 1085(e)(3)(C)(ii)–(iii). Compl. ¶ 25. Plaintiffs do not, however, allege that Just Born

had any obligation to make contributions for newly hired employees under any collective bargaining agreement.

### Legal Standard

"The standard for granting judgment on the pleadings under Rule 12(c) is similar to the standard for granting summary judgment under Rule 56(c): whether, when viewed in the light most favorable to the party against whom the motion is made . . . no genuine issues of material fact remain and the case can be decided as a matter of law." *Bell Atlantic-Maryland, Inc. v. Prince George's County*, 155 F. Supp. 2d 465, 473 (D. Md. 2001) (quotation marks omitted).

### Argument

**A.      Just Born Is Entitled to Judgment Because Just Born Is Not Obligated To Contribute to the Pension Fund on Behalf of New Employees**

Plaintiffs' claim that Just Born must make pension contributions on behalf of new employees, for whom Just Born has never voluntarily agreed to make such contributions, rests on flimsy grounds. Not only do Plaintiffs selectively read ERISA's multiemployer pension amendments to ignore the parts of the statute that defeat their claim, they do so in a way that would fundamentally damage bargaining between employers and labor organizations. The Court should reject Plaintiffs' claim and enter judgment on the pleadings for Just Born.

Although Plaintiffs' motion includes a lengthy recitation of ERISA law, most is irrelevant to the dispute before the Court. Plaintiffs' claim for relief rests primarily on

ERISA Section 305(e)(3)(C)(ii)–(iii), 29 U.S.C. § 1085(e)(3)(C)(ii)–(iii). Plaintiffs argue that "[i]f the pension plan remains in critical status when the collective bargaining agreement expires, and after 180 days the bargaining parties fail to reach a new agreement providing for contributions to the pension plan on terms consistent with one of the rehabilitation plan's contribution schedules, the plan sponsor is *required* by 29 U.S.C. § 1085(e)(3)(C)(ii)-(iii) to impose on the bargaining parties the contribution schedule from the expired agreement." ECF No. 24-1, Plaintiffs' Memorandum in Support of Motion for Judgment on the Pleadings ("MJP") at 9–10 (emphasis in original). While this premise is correct so far as it goes, Plaintiffs assume incorrectly that Just Born is a "bargaining part[y]" within the meaning of ERISA Section 305(e)(3)(C)(ii)(II), 29 U.S.C. § 1085(e)(3)(C)(ii)(II).

The term "bargaining part[y]" is critical to the functioning of Section 305, 29 U.S.C. § 1085(e)(3)(C)(ii)(II), because it describes on whom a pension fund sponsor may impose a contribution schedule. Congress chose to define this critical term by reference to the well-trodden ERISA concept of an "obligation to contribute":

> The term 'bargaining party' means—
>
> (A)(i) except as provided in clause (ii), an employer who has an obligation to contribute under the plan; or
>
> (ii) in the case of a plan described under section 404(c) of Title 26, or a continuation of such a plan, the association of employers that is the employer settlor of the plan; and
>
> (B) an employee organization which, for purposes of collective bargaining, represents plan participants employed

by an employer who has an obligation to contribute under
the plan.

ERISA § 305(j)(1), 29 U.S.C. § 1085(j)(1). Just Born obviously is not "an employee

organization" and Plaintiffs do not allege (nor could they) that the Pension Fund is "a

plan described under section 404(c) of Title 26." Accordingly, Just Born can only be a

"bargaining part[y]" if it is "an employer who has an obligation to contribute under

the plan" for new employees. ERISA § 305(j)(1), 29 U.S.C. § 1085(j)(1).

In Section 305, Congress purposefully chose not to break any new ground with

reference to the term "obligation to contribute." Instead, the subsection defines

"obligation to contribute" by giving it the same meaning as it is given elsewhere in

ERISA "under section 1392(a) of this title." ERISA § 305(j)(7), 29 U.S.C. § 1085(j)(7).

That statute defines the terms "obligation to contribute" by reference to voluntary

agreements and to federal labor law:

> For purposes of this part, the term "obligation to
> contribute" means an obligation to contribute arising—
>
> (1) under one or more collective bargaining (or related)
> agreements, or
>
> (2) as a result of a duty under applicable labor-
> management relations law, but
>
> does not include an obligation to pay withdrawal liability
> under this section or to pay delinquent contributions.

ERISA § 4212(a), 29 U.S.C. § 1392(a).

Just Born does not have an obligation to contribute arising under a collective

bargaining agreement for new employees at its Philadelphia, Pennsylvania, plant

because there is no collective bargaining agreement in force. And there are two fundamental problems with a claim premised on the argument that Just Born has an obligation to contribute for new employers as a result of an applicable labor-management relations law duty: (1) it is within the primary jurisdiction of the National Labor Relations Board and (2) it is incorrect.

1. **The NLRB Holds Primary Jurisdiction Over the Question Whether Just Born Has "An Obligation To Contribute"**

Plaintiffs brought this action under ERISA § 502, 29 U.S.C. § 1132, Compl. ¶ 2, but an ERISA section 502 contribution action is not an appropriate vehicle for determining whether Just Born has an obligation to contribute under applicable labor-management relations law. That is the decision of the Supreme Court in *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 541 (1988), which holds that when Congress enacted Section 502, authorizing pension fund sponsors to collect delinquent contributions, it did not intend to "confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make post-contract contributions constitutes a violation of the NLRA." *Id.* at 549.

In reaching its decision, the Supreme Court rejected arguments nearly identical to Plaintiffs' arguments in this case: that "the reasons for giving a district court jurisdiction of collection actions apply to post-contract delinquencies as well as those arising during the term of the contract and that it is unwise to leave a 'gap' in the

11

enforcement scheme" and that "the remedies available in NLRB proceedings are inadequate." *Id.* at 550–51; *compare* MJP at 3–5, 9–11. The Supreme Court found that these arguments are better directed to Congress, that any claimed "gap" in enforcement depends on the presumption that impasse had not been reached, that the contribution remedy may be inappropriate to address the complex issues that arise where "there is a good-faith dispute over both the existence and the extent of the employer's liability," and that "whether an employer's unilateral decision to discontinue contributions to a pension plan constitutes a violation of the statutory duty to bargain in good faith is the kind of question that is routinely resolved by the administrative agency with expertise in labor law." *Id.* at 551–53. Each response holds equally true in this case.

### 2. Just Born Has No Obligation To Contribute for New Employees Under Federal Labor Law

Even if this Court did have jurisdiction to determine whether Just Born has an obligation to contribute on behalf of new employees under applicable labor-management relations law, it should find that no such obligation exists. There is no meaningful dispute that "[i]f the parties were indeed at impasse, then the employer's statutory duty to maintain the status quo during post-contract negotiations would end." *Advanced Lightweight Concrete*, 484 U.S. at 543 n.5 (internal citation omitted). In that case, "after bargaining to impasse, that is, after good-faith negotiations have exhausted the prospects of concluding an agreement, an employer does not violate the

Act by making unilateral changes that are reasonable comprehended within his pre-impasse proposal." *Taft Broadcasting Co.*, 163 NLRB 475, 478 (1967) (quoted in *Advanced Lightweight Concrete*, 484 U.S. at 543 n.5).

Here, the Plaintiffs have not contested impasse, instead acknowledging in their motion for judgment on the pleadings that Just Born "declared that negotiations with [the Union] over a new collective bargaining agreement were at impasse." MJP at 6. Nor have Plaintiffs alleged any facts that would call into question Just Born's declaration of impasse, such as allegations that Just Born had not bargained in good faith or that the difference between Just Born and the Union's negotiating positions had made further collective bargaining between the parties futile. Nor did Plaintiffs or the Union file an unfair labor practices complaint with the NLRB to challenge Just Born's declaration of impasse during the six-month period for such complaints to be filed. *See* 29 U.S.C. § 160(b).

Notably, the Pension Fund has not asserted that Just Born is violating the Fund's rules. The Rules and Regulations of the Pension Fund track the statute's definition of the term bargaining party. In particular, they define an employer as any person or business organization which has in effect a collective bargaining agreement. Thus, without any collective bargaining agreement in effect and having not disputed the existence of an impasse, the Plaintiffs' claim is an erroneous attempt to circumvent an employer's long-held rights when a bona fide impasse is reached during negotiations.

13

Finally, neither ERISA itself nor the multiemployer amendments to ERISA are "applicable labor-management relations law[s]" within the meaning of ERISA Section 4212(a)(2), 29 U.S.C. § 1392(a)(2). It be nonsensical for Section 305 to incorporate the existing definition of "obligation to contribute" at Section 4212(a)(2) if Congress intended to impose a new labor-management relations law duty through Section 305 itself. Moreover, interpreting Section 305(c) or its component terms, like "contribution schedule" as creating a labor-management law duty would dramatically rework settled labor law. If Plaintiffs can require employers to contribute on behalf of employees who were not previously covered by the plan, another pension fund could demand that the bargaining parties switch to an "hours paid" contributions formula from an "hours worked" contributions formula, or make other fundamental changes under the guise of imposing a contribution schedule. Plaintiffs' attempt to assert an obligation to contribute on behalf of new employees, therefore, contravenes Section 4212(a)(2).

### 3. Just Born's Interpretation of ERISA Section 305 Aligns the Provision With Federal Labor Law

Under Just Born's interpretation of Section 305(c), 29 U.S.C. § 1085(c), a plan sponsor's authority to impose a contribution schedule on bargaining parties that have not reached impasse allows the statute to play an important role in pension fund recovery, without imposing the damage on labor relations that Plaintiffs' interpretation inevitably presents.

A bargaining impasse occurs only when "the parties in good faith reach a point in their discussions where further meetings and discussions objectively appear to be futile." *AMF Bowling Co., Inc. v. NLRB*, 63 F.3d 1293, 1301 (4th Cir. 1995). Moreover, collective bargaining agreement negotiations regularly last longer than 180 days, which is roughly the average length of period of bargaining for renewal collective bargaining agreements. *See Lee Lumber and Bldg. Material Corp.*, 334 NLRB 399, 402 (2001) (noting that the average time for renewal CBA negotiations in 2000 was 183 days). In this significant number of cases, the imposition of a contribution schedule will significantly assist in multiemployer pension plan funding while the bargaining parties work towards agreement.

A decision in Just Born's favor adopting this textually faithful interpretation of Section 305, avoids the harsh medicine that the Plaintiffs ask this Court to dispense: that Congress's amendments to Section 305 repeal by implication 60 years of labor law. As Plaintiff's own authority makes clear, *see* MJP at 15, a later statutory enactment controls over an earlier one only "[w]here provisions in two acts *are in irreconcilable conflict*." *EC Term of Years Trust v. United States*, 550 U.S. 429, 435 (2007) (quoting *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936)) (emphasis added). In fact, "an implied repeal is disfavored, [as] there is a 'strong presumption' against finding such a repeal." *Patten v. United States*, 116 F.3d 1029, 1034 (4th Cir. 1997) (citing *Blevins v. United States,* 769 F.2d 175, 181 (4th Cir. 1985), and *Farmer v. Emp't Sec. Comm'n*, 4 F.3d 1274, 1283 (4th Cir. 1993)). It is not credible to argue that Congress intended to

15

repeal by implication these federal labor law concepts, where Congress chose to expressly incorporate pre-existing ERISA concepts like Section 4212's definition of "obligation to contribute" and its reference to "applicable labor-management relations law" into Section 305.

Likewise, any intent on Congress' behalf to fundamentally alter an employer's rights on impasse would have been highly controversial because it would have effected a fundamental change to labor relations that applied to employers across the economy. In such a situation, one would expect to see pellucid statutory language and compelling legislative history, but Plaintiffs have posited no such authority in support of their argument for repeal by implication. *See Chisom v. Roemer*, 501 U.S. 380, 396 & n.23 (1991) ("[I]f Congress had such an intent, [it] would have made it explicit in the statute, or at least some of the Members would have identified or mentioned it at some point . . . . Congress's silence in this regard can be likened to the dog that did not bark.").

Finally, Just Born's interpretation of Section 305 is consistent with other courts' treatment of claims that Congress's multiemployer pension amendments undermine parties' rights under federal labor law. In *Trustees of Local 138 Pension Trust Fund v. F.W. Honerkamp Co., Inc.*, 692 F.3d 127 (2d Cir. 2012), the United States Court of Appeals for the Second Circuit held that Section 305(e)(3)(C)(i), 29 U.S.C. § 1085(e)(3)(C)(i), which consists of language nearly identical to Section 305(e)(3)(C)(ii), did not authorize the sponsor of a multiemployer pension fund to impose a contribution

schedule on an employer who made a best-and-final offer to withdraw from the fund. Although the Second Circuit recognized that Section 305 did not expressly include a right to withdraw, it reasoned that Congress did not intend to abrogate that right because it did not alter the withdrawal provisions elsewhere in ERISA and because "Congress did not hint at—let alone state—such an abrogation." *Id.* at 134. Here, too, Congress chose to define plan sponsor's authority to impose a contribution schedule on "bargaining parties" by express reference to existing ERISA concepts, discrediting Plaintiffs' argument that Congress intended also to supersede those concepts.

For these reasons, the Court should enter judgment in favor of Just Born.

## B.   The Court Should Not Strike Just Born's Affirmative Defenses

The Fund seeks judgment on the pleadings as to Just Born's nine Affirmative Defenses. MJP at 11–31. The normal vehicle for obtaining this relief is through a Rule 12(f) motion to strike. *See, e.g., Fed. Deposit Ins. Corp. v. British-Am. Corp.*, 744 F. Supp. 116, 117 (E.D.N.C. 1990) (treating motion for summary judgment as motion to strike); *Founders Ins. Co. v. Hamilton*, No. 5:15-CV-00408-JMC, 2015 WL 3458470, at *3 (D.S.C. June 1, 2015) (treating a motion to dismiss as a motion to strike). "Motions to strike are viewed with disfavor and are granted only for egregious violations." *Brown v. Inst. For Family Centered Servs., Inc.*, 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005). The Fund must establish that each defense is "clearly insufficient," assuming the truth of all "well-pleaded facts." *First Fin. Sav. Bank, Inc. v. Am. Bankers Ins. Co. of Fla., Inc.*, 783 F. Supp. 963, 966 (E.D.N.C. 1991) (quotation marks omitted).

Plaintiffs ask the Court to apply a different legal standard, that of a motion for judgment on the pleadings, because it has challenged all Affirmative Defenses rather than only some. MJP at 13 n.6. Plaintiffs fail to explain, however, why a party would have the option of choosing its own legal standard rather than the standard set forth in the Federal Rules of Civil Procedure. The Court should apply the motion-to-strike standard.

### 1.    Just Born's First Through Fourth Affirmative Defenses Are Cognizable

Just Born's First through Fourth Affirmative Defenses are valid for the reasons stated at Section I above.

The First Affirmative Defense, that the Complaint does not state a claim for relief, is valid because the allegations as pleaded demonstrate that Plaintiffs have no right to recover delinquent contributions.

The Second Affirmative Defense alleges that Just Born was within its rights to impose a "best offer" at impasse, which is supported by the allegations that the Union's unfair labor practice arising from that series of events was rejected by federal authorities. Answer ¶ 53.

The Third and Fourth Affirmative Defenses allege that Plaintiffs cannot litigate whether Just Born has an obligation to contribute to the Pension Fund for new employees because any determination by the district court of this issue would intrude on the NLRB's primary jurisdiction and, if so, because Plaintiffs and the Union are

time-barred from challenging Just Born's best-and-final offer as an unfair labor practice. Determining Just Born's obligations under applicable labor-management relations law is within the sole jurisdiction of the NLRB, and so this Court lacks jurisdiction to second guess these issues. Moreover, the statute of limitations to challenge the action is six months accruing at least in August 2015, so the Fund has no avenue with the NLRB. *See supra* § A.

### 2. Just Born's Fifth Through Ninth Defenses Are Cognizable and Sufficiently Pleaded

Just Born's Fifth through Ninth Affirmative Defenses are predicated on its well-pleaded allegations that Plaintiffs intentionally manipulated the actuarial process to obtain a predetermined goal of certification of the Pension Fund as being in "critical status," which is essential to Plaintiffs' claim that it is entitled to recover delinquent contributions under the rehabilitation plan.

### a. ERISA Section 515 Does Not Bar Affirmative Defenses Based on Plaintiffs' Inequitable Conduct

Plaintiffs' contention that ERISA Section 515, 29 U.S.C. § 1145, bars "virtually all affirmative defenses" is meritless. MJP at 19–25.

There is no question that Section 515 bars employers from asserting some affirmative defenses. Historically, "collection actions by multiemployer plans often were complicated by issues that had arisen between the employer *and the local union* but were unrelated to the employer's obligation to the plan." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997)

19

(emphasis added). These complications stemmed from pension funds' common law status as third-party beneficiaries, which are "subject to defenses that the promisor could assert against the original party to the contract." *Id.* Congress enacted Section 515 to "free[ ] pension and welfare funds from defenses that pertain to the *unions'* conduct," which would otherwise defeat pension funds' right to collect contributions. *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 563 (6th Cir. 2015) (quotation marks omitted) (emphasis added).

In *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982), the Supreme Court interpreted Section 515 as barring employers from raising, not "all defenses" in delinquent-contribution actions, but only "'unrelated' and 'extraneous' defenses." *Id.* at 88; *see also Bd. of Trustees of Watsonville Frozen Food Welfare Trust Fund v. California Co-op. Creamery*, 877 F.2d 1415, 1425 (9th Cir. 1989) ("The Supreme Court has clarified . . . that section 515 was not meant to preclude all defenses to contribution collection actions. Rather, the section was meant to exclude only 'unrelated' and 'extraneous' defenses."). In prohibiting defenses "*unrelated* to the employer's promise and the plans' entitlement to the contributions," *Kaiser Steel*, 455 U.S. at 87 (quotation marks omitted), section 515 does not impact defenses that are related to a plan's entitlement to contributions. Such defenses include those "that the employer has against the *trust itself*," which are valid if they pertain to the pension plans' entitlement to recover contributions. *Watsonville Frozen Food Welfare Trust*, 877 F.2d at 1425 (emphasis added).

Accordingly, courts have declined to strike or otherwise have acknowledged the legitimacy of employers' affirmative defenses when based on the acts and omissions of pension funds rather than unions. *See id.* (recognizing conflict-of-interest defense to contribution payments); *Laborers' Pension Fund v. Litgen Concrete Cutting & Coring Co.*, 128 F.R.D. 96, 98 n.2 (N.D. Ill. 1989) (allowing defenses of "laches, waiver, fraud, estoppel, misrepresentation, [and] accord and satisfaction"); *Mass. Laborers' Health & Welfare Fund v. Explosives Eng'g, Inc.*, 136 F.R.D. 24, 28 (D. Mass. 1991) (allowing possibility of waiver and estoppel defenses if predicated on acts or omissions of pension fund); *Williams v. Salt City Painting, Inc.*, No. 91-CV-0320, 1992 WL 265944, at *12 (N.D.N.Y. Oct. 1, 1992) (allowing affirmative defense that pension funds' acts were "arbitrary, unlawful, and intended to harass") (quotation marks omitted); *Trustees of Local 813 Ins. Trust Fund v. Wilner's Livery Serv., Inc.*, No. 11-CV-3180 DLI CLP, 2012 WL 4327070, at *6 (E.D.N.Y. Sept. 19, 2012) (recognizing multiple defenses, including that pension funds' "damages are the result of their own conduct and/or misconduct").

Just Born's Fifth through Ninth Affirmative Defenses are for intentional inducement, misrepresentation, unjust enrichment, unclean hands, and unlawful imposition of the Rehabilitation Plan and Preferred Schedule. Each of these Affirmative Defenses is based on Plaintiffs' inequitable conduct in obtaining a finding of "critical status" where that finding was not warranted, not on the Union's conduct in the collective bargaining process. This conduct is "[]related to the employer's

21

promise and the plans' entitlement to the contributions," *Kaiser Steel*, 455 U.S. at 87,

because Plaintiffs' entitlement to relief "'depends' on the fact that . . . the Trustees

were *required* by the 2014 MPRA . . . to impose the Preferred Schedule [of the

rehabilitation plan] on the bargaining parties." MJP at 14. Thus, if the Trustees were

*not* required to impose the Preferred Schedule because the plan should not have been

certified as being in critical status, the premise on which the Fund's right to

contributions "depends" fails. These defenses go to the heart of both the "employer's

promise" and the Fund's "entitlement to contributions" under the Preferred schedule.

   The Fund concedes that it has no case law refuting Just Born's affirmative

defenses, MJP at 20, and that all its authority concerns "'[d]efenses based on *union

conduct*.'" MJP at 21 (emphasis added) (quoting *Construction Indus. Laborers, Pension Fund

v. Wellington Concrete LLC*, No. 15-804, 2016 WL 3021586, at *2 (D. Mo. March 31,

2016) (striking affirmative defenses "based on the alleged failure of the *union* to

provide benefits under the CBA") (emphasis added)); *see also Benson v. Brower's Moving

& Storage, Inc.*, 907 F.2d 310, 311, 313–16 (2d Cir. 1990) (declining to recognize

defense of "union's abandonment of the collective bargaining agreement"); *Irigaray

Dairy v. Dairy Employees Union Local No. 17 Christian Labor Ass'n of the United States of

Am. Pension Trust*, 153 F. Supp. 3d 1217, 1246–51 (E.D. Cal. 2015) (declining to

recognize affirmative defense that union was not certified). That fact alone is

sufficient reason to deny its motion. *Nat'l Credit Union Admin. v. First Union Capital

Markets Corp.*, 189 F.R.D. 158, 163 (D. Md. 1999) ("When the court is in doubt

whether under any contingency the matter may raise an issue, the motion [to strike] should be denied.") (quotation marks omitted).

In light of Plaintiffs' lack of authority for their position and their failure to address the *Kaiser Steel* standard, it is no surprise that the Fund relies on unpersuasive musings about "considerations unique to" ERISA. *See* MJP at 20.

*First*, Plaintiffs' observation that ERISA Section 515 was intended "to give the pension plans a potent, cost-effective and swift legal remedy," MJP at 20, forgets that Congress's concern was not with *all* affirmative defenses, but rather with "issues that had arisen between the employer and the local union but were unrelated to the employer's obligation to the plan," *Ralph's Grocery Co.*, 118 F.3d at 1021, and thus only "unrelated" defenses are barred, *Kaiser Steel*, 455 U.S. at 87.

*Second*, Plaintiffs' parade-of-horribles argument that, if Just Born's defenses succeed, then "*every* participating employer . . . could resist paying" contributions, MJP at 22, ignores the elephant in the room: that courts already allow employers to assert defenses based on pension fund's inequitable conduct, such as those raised by Just Born. *See supra*. Contrary to Plaintiffs' dire predictions, the availability of such defenses has not brought collections under ERISA Section 515 to a grinding halt.

*Third*, Plaintiffs' suggestion that ERISA's "extraordinarily comprehensive statutory scheme" preempts judicially crafted defenses, MJP at 22, ignores Congress's "expectations that a federal common law of rights and obligations under obligations under ERISA-regulated plans would develop," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S.

41, 56 (1987), as well as numerous cases recognizing federal common-law affirmative defenses under that principle, *see supra*; *see also Nash v. Trustees of Boston Univ.*, 946 F.2d 960, 967 (1st Cir. 1991); *Agathos v. Starlite Motel*, 977 F.2d 1500, 1507–08 (3d Cir. 1992). Just Born's Fifth through Ninth Affirmative Defenses are "traditional" contract and equitable defenses of the sort frequently recognized by courts in the ERISA context, *e.g.*, *Nash*, 946 F.2d at 966, under "ordinary principles of contract law," *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 930 (2015).

*Finally*, the Fund's related arguments based on the express rights of action under ERISA Section 502(a), 29 U.S.C. § 1132(a), MJP at 22–23 (express causes of action for employers), 24 (express causes of action for Secretary of Labor), fail for the simple reason Just Born has not brought a "civil action." *See* 29 U.S.C. § 1132(a). Just Born raises affirmative defenses in response to the Fund's action, and even the Fund acknowledges that the existence of enumerated rights of act does not defeat all defenses.[1] *See* MJP at 21 n.9 (recognizing that affirmative defenses *can* be successful in section 515 actions). In fact, notwithstanding ERISA's express right-of-action

---

[1] This same flaw defeats the Fund's reliance on *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 145 (1985), MJP at 23, which declined to identify an implied cause of action for beneficiaries against ERISA trustees under the then-viable rubric of *Cort v. Ash*, 422 U.S. 66, 78 (1975). This case does not involve a private cause of action. *See Costello v. Grundon*, 651 F.3d 614, 624 (7th Cir. 2011) (citing, *inter alia*, *Kaiser Steel*, 455 U.S. at 86, for the distinction between private rights of action and affirmative defenses).

provisions, the Fourth Circuit *has* recognized a common law cause of action under ERISA for unjust enrichment at least under some circumstances, *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993 (4th Cir. 1990),[2] and the Third Circuit has recognized an employer's common law cause of action under ERISA for fraudulent inducement against a pension fund. *Carl Colteryahn Dairy, Inc. v. W. Pa. Teamsters & Employers Pension Fund*, 847 F.2d 113, 121–22 (3d Cir. 1988). ERISA's express rights of action cannot preempt common law *affirmative defenses* when they do not even displace all common law rights of action.

### b.     The Fifth Through Ninth Affirmative Defenses Are Adequately Pleaded

There is a split of authority within this District, this Circuit, and nationwide as to whether the pleading standards stated in *Twombly* and *Iqbal* apply to affirmative defenses. *Lockheed Martin Corp. v. United States*, 973 F. Supp. 2d 591, 593–95 (D. Md. 2013) (noting split and declining to apply the *Twombly-Iqbal* standard). The better interpretation of the Federal Rules of Civil Procedure is that the *Iqbal-Twombly* standard does not apply. *Iqbal* and *Twombly* interpreted Rule 8(a)(2), governing complaints, which requires not only a "short and plain statement" but also a "*showing*"

---

[2] *But cf. Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413, 423–24, 426 (4th Cir. 2005) (suggesting that a federal common law right may have been unnecessary in *Waller* because an express right of action was subsequently held to be available). The court need not, however, reach the nuances at issue in those cases because this case does not involve a right of action.

that the plaintiff is "entitled to relief." In contrast, Rule 8(b), governing the pleading of affirmative defenses, merely requires a defendant to "state in short and plain terms its defenses." Fed. R. Civ. P. 8(b)(1)(A). This exclusion of a showing of entitlement to relief in Rule 8(b)(1) should be dispositive. *See Lockheed Martin*, 973 F. Supp. 2d at 594. Moreover, defendants are not the "masters of their complaints" in the same way that plaintiffs are, and should not be held to the plaintiffs' pleadings standard in light of the far more restricting time period to state or potentially to lose permanently all affirmative defenses. *See* Fed. R. Civ. P. 8(c), 12(a)(1)(A).

Regardless, Just Born's Affirmative Defenses state a plausible entitlement to relief, as required by the *Iqbal-Twombly* standard. Under Plaintiffs' putative authority, affirmative defenses need be pleaded only "in such a way as to ensure that an opposing party receives fair notice of the factual basis for an assertion contained in a defense." *Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 336 (D. Md. 2012) (quotation and alteration marks omitted). The standard "does not require the assertion of all supporting evidentiary facts," but only "some statement of the ultimate facts underlying the defense . . . , and both its non-conclusory factual content and the reasonable inferences from that content, must plausibly suggest a cognizable defense available to the defendant." *Id.* (quotation and alteration marks omitted). That standard is met here. Even if the Court were to determine that any Affirmative Defenses are insufficiently pleaded, the proper remedy is not to enter judgment for Plaintiffs, but to allow Just Born leave to amend. *Id.*

26

**Fraudulent or Material Misrepresentation.** Just Born's Fifth and Sixth Affirmative Defenses are for misrepresentation. Under "ordinary principles of contract law," *see Tackett*, 135 S. Ct. at 930, a defense of misrepresentation lies where "a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying." Restatement (Second) of Contracts § 164(1) (1981). That occurred here: Plaintiffs induced Just Born's "manifestation of assent" to the Preferred Schedule of the Rehabilitation Plan by the "material misrepresentation" that the Fund was in critical status when, in fact, Plaintiffs had manipulated actuarial assumptions to place the fund in critical status, which was unnecessary had prior unbiased actuarial assumptions been used. Answer ¶¶ 28–48. Just Born had no reason to second guess these representations and so was "justified in relying" on the misrepresentation. Answer ¶¶ 46–47.

Plaintiffs' principal rejoinder is that its actions were objectively reasonable. MJP at 25–30. But reasonableness presents a question of fact that is generally reserved for discovery and trial. *See, e.g.*, *Spickerman v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 801 F.2d 257, 261 (7th Cir. 1986). This case presents no exception. The Court cannot assume without evidence, as Plaintiffs would have it do, that, for instance, reducing the long term rate of investments from 7.5% to 6.5% or altering the mortality rates are reasonable actuarial decisions. MJP at 28.

Moreover, contrary to the Fund's characterization of Just Born's allegations, MJP at 27, they state a plausible claim that Plaintiffs' actions were objectively unreasonable. The authority that Plaintiffs contend is relevant requires more than that the Fund's actuary arrive at any particular assumption; it requires that the actuary take "proper account of the various factors that one would expect a 'reasonable' actuary exercising proper professional judgment to take account of." MJP at 27; *see also Bd. of Trustees, Mich. United Food & Commercial Workers Union v. Eberhard Foods, Inc.*, 831 F.2d 1258, 1261 (6th Cir. 1987) ("the only requirement is that in every case the actuarial determination will fall within the range of reasonableness—*taking into account the unique characteristics of the fund*.") (emphasis added).

Just Born alleged that, rather than take "proper account of the various factors that one would expect a 'reasonable' actuary" to take, the Fund "manipulated actuarial assumptions," Answer ¶ 28, and "departed from past actuarial assumptions and sound actuarial principles in evaluating the financial health of the Pension Fund," Answer ¶ 38, through several specific changes in assumptions all designed to overstate the Pension Fund's financial problems, Answer ¶¶ 39–42, to reach the *predetermined* goal "to obtain a finding that the Pension Fund was in 'critical status,'" Answer ¶ 43. Reasonable actuaries make their assumptions based on "the unique characteristics of the fund," *Eberhard Foods, Inc.*, 831 F.2d at 1261, not based on predetermined targets made absent consideration of those characteristics. Just Born therefore did much more than allege "*subjectively bad motive*," MJP at 27; it alleged that Plaintiffs failed in the

28

most basic duty of taking into account the relevant information and instead manipulated numbers for an ulterior purpose.

In addition, Plaintiffs' contention that Just Born's allegations of fraud are insufficient, MJP at 30–31, fails. Fraud is not a necessary element of a misrepresentation defense; the defense is satisfied "by either fraudulent or a material misrepresentation." Restatement (Second) of Contracts § 164(1). The representation that the Pension Fund was in critical status was certainly "material" to inducing Just Born to agree to the Rehabilitation Plan, so whether it was a fraudulent misrepresentation or simply a material one can be sorted out in discovery. In any case, Just Born plausibly alleged that the misrepresentation *was* fraudulent, because the Fund knew "that the assertion [was] not in accord with the facts," Restatement (Second) of Contracts § 162(1)(a), given that the Fund was responsible for manipulating the assumptions to place the Pension Fund in critical status, Answer ¶¶ 28–48.

**Unclean Hands.** Just Born's Eighth Affirmative Defense is for unclean hands. The unclean hands defense applies if (1) the plaintiff's conduct was inequitable, (2) the plaintiff's conduct directly relates to the claim it asserts against the defendant, and (3) the plaintiff's conduct injured the defendant. *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 128 F. Supp. 2d 926, 949 (E.D. Va. 2001), *aff'd in part*, *vacated in part on other grounds*, 28 F. App'x 207 (4th Cir. 2002). All of these elements are well-pleaded: (1) Plaintiffs acted inequitably by manipulating actuarial assumptions to obtain a critical

29

status finding, (2) this act is directly relevant to the claims asserted in this case because the critical status determination is the predicate for Just Born's alleged obligation to make contributions, and (3) Just Born was injured by the substantial increase in surcharges, Answer ¶ 49, and would be further injured by the relief Plaintiffs seek in this case.

**Unjust Enrichment.** Just Born's Seventh Defense is that granting Plaintiffs their requested relief would unjustly enrich Plaintiffs. This defense requires a showing that requested relief would confer a benefit on Plaintiffs, with appreciation or knowledge of the benefit by Plaintiffs, under circumstances where it would be inequitable for Plaintiffs to retain the benefit without payment of its value. *See, e.g.*, 26 Williston on Contracts § 68:5 (4th ed.). Those elements are satisfied: (1) making the demanded contributions would be a benefit, (2) Plaintiffs would have knowledge of that benefit, and (3) it would be inequitable under the circumstances to confer that benefit given that Just Born is not lawfully required to confer it and that Plaintiffs have already collected over $1 million in excess contributions based on the improper 2012 critical status determination.

## CONCLUSION

For the above-stated reasons, the Court should deny Plaintiffs' motion for judgment on the pleadings and grant Just Born's motion for judgment on the pleadings.

Date: August 15, 2016                    Respectfully submitted,


                                         /s/ Elizabeth A. Scully
                                         Elizabeth A. Scully
                                              (MD Fed. Bar # 27402)
                                         Mark W. DeLaquil (phv)
                                         Jay P. Krupin (phv)
                                         David B. Rivkin, Jr. (phv)
                                         Baker & Hostetler LLP
                                         1050 Connecticut Ave. N.W.,
                                         Suite 1100
                                         Washington, DC 20036
                                         Phone: (202) 861-1527
                                         Fax: (202) 861-1783
                                         escully@bakerlaw.com

                                         *Counsel for Defendant Just Born*

**CERTIFICATE OF SERVICE**

I certify that on August 15, 2016, a true and correct copy of the foregoing was filed using the Court's CM/ECF system, which will send notification to all counsel of record.

/s/ Elizabeth A. Scully
Elizabeth A. Scully